IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
August 13, 2025 Session

## RHONDA KAY DAVIS[1] v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Grundy County**
**No. 2016-CR-5583  Bradley Sherman, Judge**

_____

### No. M2024-01238-CCA-R3-PC

_____

Petitioner, Rhonda Kay Davis, appeals the denial of her petition for post-conviction relief, arguing that the post-conviction court erred in finding that trial counsel provided effective assistance of counsel and that her plea was knowingly and voluntarily entered.  Upon review of the entire record, the briefs and oral arguments of the parties, and the applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which J. ROSS DYER and TOM GREENHOLTZ, JJ., joined.

Robin Ruben Flores, Chattanooga, Tennessee, for the appellant, Rhonda Kay Davis.

Jonathan Skrmetti, Attorney General and Reporter; Lacy E. Wilber, Senior Assistant Attorney General; Courtney Lynch, District Attorney General; and Steven Strain and Taffy Wilson, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

### Factual and Procedural Background

*Plea Proceedings*

On July 11, 2016, Petitioner was indicted for aggravated robbery, aggravated assault, and theft of property valued at $500 or less.  Pursuant to a plea agreement,

---

[1] The petition lists Petitioner's name as "Rhonda Kay Davis Layne."  Additionally, the post-conviction court entered an order appointing a *guardian ad litem* for Petitioner and changing the case style according.  We will use Petitioner's name as it appears in the original indictment.

Petitioner pled guilty to aggravated robbery in exchange for the dismissal of the remaining two counts.

At the November 7, 2017 hearing, the trial court confirmed with Petitioner that she understood the terms of the plea and the rights she would forfeit by pleading guilty. When asked if her signature appeared at the bottom of the guilty plea petition and waiver of rights form, Petitioner requested to approach the bench to inspect the signature and then confirmed that it was her signature.

The State then set out the facts underlying the plea:

> Your Honor, if we were to go to trial, we would be calling a number of witnesses who are employees and technicians and pharmacists at Mike's Pharmacy located in Tracy City, Grundy County, Tennessee, who would testify that back on January 21st of 2015, that a person who appeared to be a female, but was somewhat disguised[,] came into . . . Mike's Pharmacy in Tracy City. This individual appeared to be a female about five foot, three inches tall, put a gun to the stomach of a pharmacy tech . . . and demanded some Oxycodone and Xanaxes, which w[ere] provided to her. The value of these being approximately $300.00.
>
> . . . .
>
> There was a film, Your Honor, it too did not completely reveal who the individual was, but there was a description of the clothing of that person that was observable from the film and did appear to possibly be a female, and approximately five foot, three inches tall.
>
> Judge, sometime shortly within maybe minutes or an hour or so, there were witnesses present at Myers Hill Church, which was not too far distant from Mike's Pharmacy, who observed a vehicle pull up and drop out some clothes. There was some thought [that] maybe it was a donation initially to the church, but upon further observation and having heard of the robbery, law enforcement was contacted. These clothes were recovered. Ultimately, these clothes were sent in and a DNA test was performed on these clothing and DNA . . . was located.
>
> Sometime subsequent to that Chief Charlie Wilder with the Tracy City Police Department had heard of . . . an allegation of a significant

robbery in another county and ultimately ended up interviewing [Petitioner].  At that time, she requested counsel, and the discussion stopped, but she was emotional, somewhat maybe like she is today.  There was tears and mucus about her eyes and nose, and she wiped her eyes and nose with tissue and discarded it in the garbage.  That was retrieved by Chief Wilder and was sent in to the TBI and the DNA matched up on the clothing with the DNA that was on the tissue along with a separate swab that was done. . . .

Judge, we may have put in proof possibly, it may or may not have been admissible, but we may have put in proof of another similar crime that occurred in another county in which similar conduct occurred, and [Petitioner] was found present at the location in the possession of a weapon.  And the proof would be that all of this charge occurred in Grundy County.

The trial court then questioned Petitioner:

[Trial court]: Okay.  All right.  [Petitioner], did you hear what [the prosecutor] said?

[Petitioner]: Yes, sir.

[Trial court]: Are those facts true or false?

[Petitioner]: Sir, I don't know.

[Trial court]: I mean you're not - - you're not opposing the facts as stated by [the prosecutor], are you?

[Petitioner]: I don't know about all those facts, I really don't.  I just know what I've been told and what was saying that had been found.

[Trial court]: Well, [trial counsel], I mean you've reviewed this matter.  Certainly[,] DNA testing is pretty - - -

[Trial counsel]: (Interposing) Yes.

[Trial court]: Damning as it were.

- 3 -

[Trial counsel]: Yes.

[Trial court]: Any doubt in your mind that the DNA tests were properly conducted and that they are, what they are[?]

[Trial counsel]: No, Your Honor, I evaluated them, and I found them to be admissible.

[Trial court]: All right. [Petitioner], do you believe it's in your best interest to offer this plea today?

[Petitioner]: Yes, sir.

[Trial court]: All right. And [trial counsel], do you likewise believe it's in your client's best interest to offer this plea today?

[Trial counsel]: Yes, I do, Your Honor.

The State recommended a twelve-year sentence to run concurrently with a plea "that has not been put down yet in Coffee County, also on an aggravated robbery case." Petitioner confirmed that this was the agreement the parties had "worked out." The trial court accepted the plea and stated that the Grundy County judgment would show that the sentence would be served concurrently with Petitioner's Coffee County sentence. It noted its belief that Coffee County, as the "last sentencing court," would "make the final determination" regarding alignment of the sentences. Trial counsel affirmed that it was her understanding that "the other sentence [was] going to be accepted [in Coffee County] as concurrent" and explained that she had been "working with counsel [who] represented [Petitioner] in Coffee County, so this . . . plea bargaining has really gone on in both counties[.]" Trial counsel informed the court that Petitioner was scheduled to enter a plea in Coffee County on November 15, 2017. At trial counsel's request, the trial court allowed Petitioner to remain on bond and self-report to the Coffee County Jail on November 15, 2017,[2] to be transported to court to enter a plea.

*Post-Conviction Proceedings and Hearing*

On October 18, 2018, Petitioner filed a petition for post-conviction relief, arguing that she received the ineffective assistance of counsel because trial counsel did not have

---

[2] Testimony at the post-conviction hearing established that Petitioner did not report as instructed to enter her plea in Coffee County.

- 4 -

Petitioner's competency evaluated.[3]  The petition established the following timeline: On August 15, 2015, seven months after the Grundy County aggravated robbery was committed, Petitioner was arrested for aggravated robbery in Coffee County.  During that arrest, "law enforcement inflicted severe injuries upon [Petitioner], including injuries to her head and brain."  In the days following her August 15, 2017 arrest, Petitioner experienced "idiosyncratic falls, drooling, and lethargy."  She was transported to Coffee County Medical Center and then St. Thomas Medical Center in Murfreesboro for treatment.  Pursuant to court order, Dr. Tamara Raphaeli conducted a "psychological evaluation" of Petitioner on June 30, 2017.  Petitioner pled guilty to the Grundy County aggravated robbery on November 7, 2017.  On April 6, 2018, Petitioner experienced "another two idiosyncratic falls, striking her head at least once."  Petitioner was transported to the Lincoln County Medical Center and was diagnosed with "syncope."  At the time the petition was filed, there was a "pending motion for a more thorough competency evaluation" in Coffee County.

On January 20, 2019, the post-conviction court entered an order staying post-conviction proceedings "pending the outcome of [Petitioner]'s current criminal case in the United States District Court."  Testimony at the post-conviction hearing established that after Petitioner failed to appear to enter her plea in Coffee County, she was indicted on federal charges related to the Coffee County aggravated robbery.

On April 11, 2019, Petitioner filed a Notice of Filing Forensic Evaluation and Opinion on Competency with an evaluation conducted by Dr. Matthew Opesso attached.  The evaluation was dated April 8, 2019, and noted that Petitioner had been transferred to the Federal Medical Center, Carswell ("FMC Carswell") "with questions as to her competence to stand trial" in federal court.  In conducting the evaluation, Dr. Opesso spoke with Petitioner's family, post-conviction counsel, and the Assistant United States Attorney, and reviewed a number of records, including the evidence for the Coffee County aggravated robbery and the "entire medical and mental health record generated during the course of [Petitioner]'s evaluation at FMC Carswell and while in the custody of the Bureau of Prisons (BOP)[.]"  Dr. Opesso opined that Petitioner "is not presently competent to stand trial" and that her symptoms "have impaired her ability to demonstrate a factual and rational understanding of the adversarial nature of the legal proceedings against her and to assist in her own defense."

On July 12, 2023, Petitioner filed a Notice of Filing Record including documents from Petitioner's federal case showing that on May 23, 2019, a Report and

---

[3] The petition references Exhibits A through G but only Exhibits A, B, and the first three pages of Exhibit C appear in the technical record with the stamp-filed petition.  However, at the post-conviction hearing, Petitioner introduced a copy of the petition including all attached exhibits.

Recommendation filed in Petitioner's federal case recommended that the District Judge enter an order finding Petitioner incompetent based on Dr. Opesso's April 8, 2019 evaluation and that Petitioner should remain at FMC Carswell to obtain treatment to restore her competency. While the record does not include all of Petitioner's reports filed in the federal case, it appears she had several evaluations finding her not competent and then finding that treatment had restored her competency. However, on October 28, 2021, the United States District Court entered an order finding Petitioner competent to stand trial.

On September 9, 2022, Petitioner was ordered to remain at FMC Carswell to undergo evaluation "to determine whether [she] is presently suffering from a mental disease or defect as a result of which [her] release would create a substantial risk of bodily injury to another person or serious damage to property of another[.]" The federal judge noted that Dr. Opesso had again evaluated Petitioner's competency on August 19, 2022, and determined that Petitioner could not be restored to or maintain competency for "more than a week or two[.]"

On March 7, 2023, the district judge entered an order granting the prosecution's motion to abate the prosecution and dismissed the federal indictment because "after many competency proceedings, the [c]ourt has found [P]etitioner incompetent to stand trial and unable to be restored to mental competency."

At the April 15, 2024 post-conviction hearing, Dr. Tamara Raphaeli's deposition transcript with exhibits was entered as an exhibit. Dr. Raphaeli conducted an evaluation of Petitioner on June 30, 2017, "to assess [Petitioner's] level of functioning and abilities and to determine a possible mental health diagnoses. . . . A psychological evaluation providing treatment recommendations was requested by [trial counsel], [Petitioner], and her family."

Dr. Raphaeli confirmed that in evaluating Petitioner she relied solely upon information provided to her by Petitioner and trial counsel. Trial counsel did not provide contact information for family members and did not inform Dr. Raphaeli about Petitioner's August 15 arrest, potential brain injury, or hospitalization. She agreed that it would have been beneficial "to have more detailed information about the background of [Petitioner], including the injuries she suffered" during the August 15 arrest and that she would have reviewed any medical records provided to her.

Dr. Raphaeli noted that Petitioner arrived on time for the evaluation, was casually dressed, and appropriately groomed. Dr. Raphaeli noted "no gross abnormalities in posture, fine motor skills, or coordination" and Petitioner's emotions "were expressive, and speech quantity and quality were within normal limits." Petitioner "did not display any severe cognitive deficits or impediments" and was "not suffering from a severe

psychiatric disorder in need of immediate hospitalization." Petitioner's thought patterns were "coherent, logical, and goal-oriented[.]"

Petitioner disclosed that she had been charged with aggravated robbery in Coffee County and said she did not remember "any of it" but that "they said they handed [her] a bag that had something in it, the next thing [she knew she] was on the ground getting hit and punched and the next thing [she] knew [she] woke up in jail. They said [she] had a pistol." Dr. Raphaeli's recollection of Petitioner's knowledge of the arrest was that Petitioner "did not know what happened to her, and she was sort of disassociated[.]"

Dr. Raphaeli administered the Wechsler Adult Intelligence Scale, Fourth Edition. Petitioner's "general cognitive ability was within the Extremely Low range of intellectual functioning, as measured by the [Full Scale IQ]. Her overall thinking and reasoning abilities exceed those of only approximately [two percent] of individuals her age (FSIQ = 68)[.] . . . She performed much better on nonverbal than on verbal reasoning tasks." Petitioner's score on the MMPI-2, which "is used to assess personality disorders and clinical syndromes," reflected "much psychological distress at this time."

During her deposition, Dr. Raphaeli reviewed Dr. Opesso's forensic evaluations. She agreed that Dr. Opesso's reports relied on significantly more information than she had reviewed prior to her evaluation of Petitioner. The "diagnostic impressions" remained consistent through Dr. Opesso's evaluations and were consistent with Dr. Raphaeli's observations of Petitioner during her June 30, 2017 evaluation. Dr. Raphaeli agreed that Dr. Opesso's reports indicated that Petitioner "was operating on the level of basically . . . a small child, young child." She agreed with Dr. Opesso's statement in his January 13, 2023 report that Dr. Raphaeli's evaluation was not competency related.

On cross-examination, Dr. Raphaeli confirmed that she was not hired to conduct a competency evaluation and many of the records that Dr. Opesso relied upon were not in existence at the time of her evaluation. She affirmed that Petitioner was able to communicate effectively during the evaluation and Petitioner appeared honest and forthright. Dr. Raphaeli agreed that had Petitioner suffered a traumatic brain injury, the injury could "deteriorate" over time.

Neal Pinkston testified as an expert in criminal law. Mr. Pinkston was hired by post-conviction counsel to review and prepare a report regarding trial counsel's performance in representing Petitioner. In creating the report, Mr. Pinkston reviewed the order for Dr. Raphaeli's evaluation filed in Grundy County on June 23, 2017, the transcript of Petitioner's guilty plea, the petition for post-conviction relief, Dr. Opesso's reports between April 9, 2019, and January 13, 2023, and the federal indictment and dismissal.

Mr. Pinkston did not speak with trial counsel, but stated that there was no requirement that either he or post-conviction counsel speak with trial counsel about her representation.

Mr. Pinkston noted that it "appeared that [Petitioner] had some type of brain issues from an interaction with the police department" based on the medical records attached to the post-conviction petition. Upon further questioning by the court, Mr. Pinkston stated he was not sure that there were records that "pinpoint" a "diagnosis of a traumatic brain injury or anything like that" from the August 15 arrest.

In reviewing Dr. Raphaeli's report, Mr. Pinkston did not see that Petitioner's competency or insanity at the time of the offense was evaluated. He opined that a "more thorough examination of the mental health records" and the family's anecdotal evidence would have convinced trial counsel to seek an evaluation of Petitioner's competency and insanity. Mr. Pinkston noted that the "sheer volume" of federal forensic evaluations was noteworthy. He opined that Dr. Raphaeli's report did not assist the trial court, trial counsel, or the prosecutor in determining whether Petitioner was competent to stand trial or sane at the time of the offense. Mr. Pinkston opined that trial counsel was ineffective for failing to seek an evaluation of Petitioner's competency to stand trial and insanity at the time of the offense.

Regarding the guilty plea, Mr. Pinkston was unsure of "the extent of the negotiations that went into this particular case" because the agreed sentence was "at the highest end of the range." The "only theoretical benefit" to pleading at the top of the range was to avoid federal prosecution. He was unaware of any conversations between Petitioner and trial counsel about the plea but asserted that based on the plea hearing transcript, it did not appear that Petitioner "was given adequate time to explore her options or understood the consequence of the plea." Mr. Pinkston was concerned about Petitioner's equivocation regarding the underlying facts of the case at the plea hearing and trial counsel's failure to request a continuance or break to speak with Petitioner. He opined that it was ineffective for trial counsel to affirmatively state that the plea was in Petitioner's best interest without knowing whether Petitioner was competent to stand trial at the time of the offense.

Mr. Pinkston stated that it would have been "reasonable" for trial counsel to negotiate a global plea agreement to dispose of the cases in both counties but noted that it did "not appear to have been accomplished in this case." He opined that "if counsel is unaware of whether they're concurrent or consecutive, then it essentially would be very difficult for an individual to give a free and voluntary plea." Mr. Pinkston stated that if he were defense counsel, he would want to know how Petitioner's plea in Grundy County would impact her case in Coffee County and the potential case in federal court before advising Petitioner.

It was Mr. Pinkston's opinion that trial counsel's performance was deficient "on two very important issues," namely not ordering competency and sanity evaluations and not gleaning how the Grundy County plea interplayed with Petitioner's Coffee County case and subsequent federal prosecution.

On cross-examination, Mr. Pinkston confirmed that he did not speak with trial counsel to determine why she made certain decisions. He agreed that the plea hearing transcript "indicate[d] that maybe [a joint agreement] was discussed, but it's nothing in concrete terms." He further agreed that any agreement Petitioner had made regarding her Coffee County charges could have been revoked after Petitioner failed to appear on November 15, 2017 to enter a plea in that case. He stated that it was "[n]ot necessarily" a bad agreement to plead guilty in exchange for concurrent twelve-year sentences in Grundy and Coffee Counties.

Mr. Pinkston was also asked to review an excerpt of the transcript from a February 9, 2023 psychiatric evaluation hearing in the Eastern District federal court in which Dr. Opesso testified that Petitioner's crimes were motivated by her addiction, which had been adequately treated. Dr. Opesso also opined that Petitioner was "not dangerous because of her mental disease which makes her not competent to stand trial." Dr. Opesso agreed that he did not have the ability to render an opinion regarding Petitioner's competency from any point prior to 2019 and that his opinion "would not speak to whether or not she was competent when she entered a plea in state court in 2017." Mr. Pinkston had not reviewed that information in forming his opinions.

Petitioner's mother, Barbara Meeks, her sister, Stephanie Meeks, her daughter, Whitney Comer, and a close family friend, Harold "Rusty" Siebert each testified that Petitioner changed "[s]ignificantly" after the August 15 arrest. Before the arrest Petitioner took care of her home and children and could hold a conversation normally but after the arrest, Petitioner was depressed and could not communicate effectively. Ms. Comer explained that in the years before the arrest, Petitioner had "seemed down, and for . . . many years[,] she had kind of seemed a little slow, to be honest." Ms. Comer described Petitioner as "child[-]like in a lot of ways" after the August 15 arrest. Each witness denied that Dr. Raphaeli spoke with them prior to issuing her report.

Trial counsel testified that she had represented a "great deal" of criminal defendants but stopped taking criminal cases in 2022. She could not recall how many of her clients she had evaluated for incompetency or insanity. Trial counsel was aware of the physical altercation during Petitioner's August 15 arrest, and she would have looked at the "prosecution paperwork" regarding the arrest. Trial counsel "had no reason to need to obtain the medical records" following the arrest.

Trial counsel stated that she "didn't have any reason to question [Petitioner's] competency" during her representation. Trial counsel spoke with Ms. Meeks but they "never had a discussion about [Petitioner's] competency." Ms. Meeks and trial counsel spoke about the August 15 arrest, and trial counsel looked at pictures of Petitioner following the arrest. She explained that the conversation was "in the context of whether or not there was civil liability for that." Trial counsel "vaguely" remembered speaking with Mr. Siebert but could not recall whether she spoke with Stephanie Meeks or Whitney Comer.

Trial counsel testified that she did not engage Dr. Raphaeli to perform a competency evaluation; rather, she hired Dr. Raphaeli "to rule out that [Petitioner] had a personality disorder . . . that is not redeemable." Trial counsel filed an "Order for Psychological Evaluation" because "[a]t the time [Petitioner] was in jail[,] and it was the only way for [trial counsel] to get her for the evaluation." She explained that she used the results from the evaluation to bring the prosecutor to the negotiation table, which ultimately worked when the prosecutor agreed to concurrent sentences for Petitioner's Grundy and Coffee County cases. She agreed that the Grundy County prosecutor did not have jurisdiction over the Coffee County case but explained that the "negotiation was happening simultaneously with the negotiation [in Grundy County] and they were communicating, the two assistant district attorneys were communicating with one another as well as [Petitioner's] two attorneys were also communicating with one another."

Trial counsel referred to Petitioner's November 7, 2017 plea hearing transcript: "So as is expressed here, she was entering her plea [in Grundy County], [and then] she was going to go to Coffee County enter a plea there and we did have a global agreement." She further explained that Coffee County would have adhered to the agreement had Petitioner not failed to appear for the plea hearing on November 15. Trial counsel also "obtained a comfort letter from the federal prosecutors that if [Petitioner] entered the agreement that . . . we had made in this county as well as in Coffee County, that they would not pursue her federally."

Trial counsel did not request a break during the plea hearing when Petitioner equivocated about the facts of the case because she had spoken with Petitioner prior to the hearing and knew that Petitioner understood that she was going to court to enter a guilty plea.

On cross-examination, trial counsel affirmed that neither post-conviction counsel nor Mr. Pinkston spoke with her regarding this case. Trial counsel agreed that there was "basically no defense" to the Coffee County robbery and "a strong possibility" that Petitioner would be convicted in Grundy County. Because of the facts of the cases, both Grundy and Coffee County prosecutors wanted consecutive sentences but trial counsel

worked with both state prosecutors and federal prosecutors to resolve the cases against Petitioner with a global plea agreement. Trial counsel had no concerns about Petitioner's competency because Petitioner had been able to effectively communicate with trial counsel throughout her representation.

Upon questioning by the post-conviction court, trial counsel explained that she had worked with clients diagnosed with a traumatic brain injury and based on her experience, she did not notice any indicia of a traumatic brain injury in Petitioner during her representation. Trial counsel believed that Petitioner was "highly embarrassed and ashamed" to admit to the facts of the Grundy County robbery in front of her family members who were present at the plea hearing. Trial counsel stated:

> [Petitioner] comprehended what I said to her. Her memory was good. Certainly, you know, people we defend are less sophisticated than we are, so sometimes you convert legal language to make sure they understood it in laymen's terms, but yeah, she understood everything. She was always appropriate with me. And again, it wasn't just my eyes on her, it was [Coffee County defense counsel]'s eyes on her, Dr. Raphaeli's eye on her. I mean, I spoke with Dr. Raphaeli after the evaluation. There [were] family members, there [were] all kinds of opportunity for other persons who had eyes on her to report to me the issues and no one ever did, including a psychologist.

The post-conviction court entered a written order denying post-conviction relief on June 10, 2024.[4] It found trial counsel's testimony "wholly credible." It further found that Petitioner's family's testimony was "earnest, well-intentioned and generally credible" but also noted the "familiar bias and their desire to see [Petitioner] released from confinement." It noted that "none of the family testified about the Petitioner's deportment at the plea hearing." The post-conviction court found that it was "clear" that trial counsel worked closely with those who cared most about Petitioner to serve Petitioner's legal interests. The post-conviction court determined that it could not "give any great weight to" Mr. Pinkston's expert testimony because Mr. Pinkston did not speak to trial counsel before compiling his report. It noted that the attorney-client privilege had been waived between Petitioner and trial counsel and thus, trial counsel "would have been best positioned to discuss the facts and circumstances surrounding the competency issue[.]"

---

[4] The trial court later ordered that the effective date of the order would be July 24, 2024, the date that Petitioner received a copy of the order from the clerk's office.

The post-conviction court found that trial counsel was not deficient for not requesting a competency evaluation and that Petitioner had not shown prejudice. It credited trial counsel's testimony that she "never had a reason to suspect that [Petitioner] was mentally incompetent," that Petitioner's family did not raise concerns about Petitioner's competency to trial counsel, and that the conversation about Petitioner's injuries from the August 15 arrest "was about whether law enforcement could be civilly liable" not whether Petitioner was competent. The post-conviction court found that Dr. Raphaeli was retained "in an effort to humanize [Petitioner] and bring an otherwise intractable prosecutor to the negotiating table" and noted that Dr. Raphaeli did not include any notable concerns regarding Petitioner's speech, motor, or communication skills. Trial counsel utilized Dr. Raphaeli's evaluation and worked with Petitioner's Coffee County attorney and the federal authorities to negotiate a plea that resolved both the Grundy County and Coffee County cases while avoiding consecutive sentences and federal prosecution. The post-conviction court noted that when Petitioner failed to appear in Coffee County "[i]t seems, at the point of [P]etitioner's non-appearance, that the deal for concurrent sentencing along with any assurances from the federal authorities were off."

The post-conviction court found that "it is uncontroverted that Petitioner's mental state had declined in the years following the entry of that plea" but that "[n]o part of the record compiled after the November 7th, 2017[] plea vitiates [the trial judge]'s finding that [P]etitioner was competent to enter her plea and that she did so [knowingly and] voluntarily." At the plea hearing, Petitioner confirmed that she could read and write, that the signature on the plea agreement was her own, that she understood the consequences of the plea and the rights that she was giving up, and that she was not forced, pressured, or intimidated to plead guilty. The post-conviction court noted that Petitioner was deemed competent "on at least one occasion at some point during the post-plea evaluations" and that Dr. Opesso could not opine on Petitioner's competency at the time of the plea hearing.

The post-conviction court noted that it initially "had some concern that [Petitioner] may not have fully understood the factual allegations to which she was pleading." However, it credited trial counsel's testimony that Petitioner "understood the facts but was embarrassed and ashamed of having to take responsibility for her actions with her family . . . in the courtroom." It noted that trial counsel's testimony established that Petitioner was "always alert, able to comprehend, and able to remember things" during trial counsel's representation.

Petitioner's timely appeal is now before this court.

- 12 -

**Analysis**[5]

On appeal, Petitioner contends that she received ineffective assistance of counsel, resulting in a guilty plea that was not knowingly and voluntarily entered. Specifically, Petitioner argues that trial counsel failed to have her mental competency properly evaluated. She also asserts that the post-conviction court erred by disregarding Mr. Pinkston's and Petitioner's family's testimony and by crediting trial counsel's testimony. The State asserts that the post-conviction court properly denied relief. We agree with the State.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. Similarly, the Due Process Clause of the United States Constitution requires that a guilty plea be entered knowingly, voluntarily, and intelligently. *Buie v. State*, No. M2022-01232-CCA-R3-PC, 2024 WL 242791, at *3 (Tenn. Crim. App. Jan. 23, 2024), *no perm. app. filed*. Thus, Petitioner's claims are properly addressed in a post-conviction petition.

A petitioner bears the burden of proving the factual allegations contained in the petition by clear and convincing evidence. T.C.A. § 40-30-110(f); *Dellinger v. State*, 279 S.W.3d 282, 296 (Tenn. 2009). When a petition presents a mixed question of law and fact, such as a claim of ineffective assistance of counsel and a challenge to the validity of a guilty plea, an appellate court is bound by the factual findings of the post-conviction court unless the evidence in the record preponderates against those findings, but the post-conviction court's application of law to those factual findings is reviewed de novo with no presumption of correctness. *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009); *Buie*, 2024 WL 242791, at *3. "[A]ppellate courts are not free to re-weigh or re-evaluate the evidence, nor are they free to substitute their own inferences for those drawn by the post-conviction court." *Whitehead v. State*, 402 S.W.3d 615, 621 (Tenn. 2013).

## I.     Ineffective Assistance of Counsel

Petitioner argues that trial counsel was ineffective for failing to have her competency evaluated despite being made aware "that something was wrong with" Petitioner. She asserts that "[i]t appeared that [trial counsel] had no idea what a mental evaluation for competence entailed" and that Mr. Pinkston's testimony highlighted trial counsel's "lack of competence and diligence[.]" Embraced in this issue raised by Petitioner are her claims that the post-conviction court erred in discounting Mr. Pinkston's expert

---

[5] We have reorganized Petitioner's issues for clarity.

testimony and crediting trial counsel's testimony and disregarding the testimony of Petitioner's family and family friend.

When a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show that (1) counsel's performance was deficient and (2) the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Butler v. State*, 789 S.W.2d 898, 899 (Tenn. 1990); T.C.A. § 40-30-110(f). Failure to satisfy either prong results in the denial of relief. *Strickland*, 466 U.S. at 697; *Nesbit v. State*, 452 S.W.3d 779, 786-87 (Tenn. 2014). Accordingly, if either factor is not satisfied, there is no need to consider the other factor. *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007) (citing *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004)). Deficient performance is representation that falls below "an objective standard of reasonableness" as measured by prevailing professional norms. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015) (quoting *Strickland*, 466 U.S. at 688). To show prejudice, a petitioner must demonstrate that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *Kendrick*, 454 S.W.3d at 458. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Kendrick*, 454 S.W.3d at 458 (quoting *Strickland*, 466 U.S. at 694).

Regarding Petitioner's challenges to the post-conviction court's credibility findings, an appellate court is bound by the factual findings of the post-conviction court unless the evidence preponderates against those findings. *Kendrick v. State*, 454 S.W.3d at 457. "Assessing the credibility of witnesses is a matter entrusted to the post-conviction judge as the trier of fact." *Maxwell v. State*, No. M2023-01090-CCA-R3-PC, 2024 WL 2186557, at *6 (Tenn. Crim. App. May 15, 2024), *perm. app. denied* (Tenn. Sept. 12, 2024). "[T]he party seeking to overturn the findings of the [post-conviction] judge bears the burden on appeal of demonstrating why the evidence contained in the record preponderates against the findings of the [post-conviction] judge." *Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997).

Petitioner asserts that the post-conviction court erred by "discount[ing]" Mr. Pinkston's testimony because "[t]here is nothing that requires [Mr. Pinkston] to speak with [trial counsel.]" Under Tennessee Rule of Evidence 702, an expert may give an opinion if the expert's specialized knowledge will "substantially assist" the trier of fact to understand the evidence. Whether to allow expert testimony is within the sound discretion of the trial court. *State v. Trent*, No. E2015-00354-CCA-R3-CD, 2017 WL 1191300, at *11 (Tenn. Crim. App. Mar. 30, 2017). When admitted, expert testimony is not conclusive, even when unrebutted, and the trier of fact may place whatever weight it chooses on such testimony. *Edwards v. State*, 540 S.W.2d 641, 647 (Tenn. 1976).

- 14 -

Here, the post-conviction court determined that it could not "give any great weight" to Mr. Pinkston's testimony because Mr. Pinkston failed to speak with trial counsel about her representation of Petitioner. Mr. Pinkston opined that trial counsel was ineffective, yet failed to ascertain from trial counsel whether not having Petitioner's competency evaluated was a reasonable decision made after adequate investigation. *See Granderson v. State*, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006). The post-conviction court found that trial counsel would have been "best positioned" to explain the circumstances surrounding the plea and why she did not have Petitioner's competency evaluated. Trial counsel explained that based on her interactions with Petitioner, she had no concerns about Petitioner's ability to understand the charges and thus did not seek a competency evaluation. The purpose of the mental evaluation trial counsel did obtain was to aid in securing a plea agreement which she accomplished. The record does not preponderate against the post-conviction court's factual finding crediting trial counsel's testimony and not "giv[ing] any great weight" to Mr. Pinkston's testimony.

Next, Petitioner asserts that the post-conviction court erroneously "disregarded" the testimony of Petitioner's family on the "flawed assumption" that the family testimony was about matters after the guilty plea. The post-conviction court found that "to the extent that [the family testimony] serve[d] to shed light on Petitioner's mental acuity, they all come well after Petitioner's plea to the charge of Aggravated Robbery." Contrary to the post-conviction court's findings, testimony from Petitioner's family clearly related to the change in Petitioner's mental acuity after the August 15 arrest, rather than after the plea hearing. The family testimony established that Petitioner's mental acuity was waning, which the post-conviction court acknowledged. However, regardless of the timeline, the family testimony did not address Petitioner's competency at the time of her plea and did not address whether Petitioner understood the charges against her and was able to assist trial counsel in her defense. *See Collier v. State*, No. M2010-00433-CCA-R3-PC, 2011 WL 4907800, at *7 (Tenn. Crim. App. Oct. 17, 2011) (citing *Drope v. Missouri*, 420 U.S. 162, 171 (1975)). The record does not preponderate against the post-conviction court's conclusion that the family testimony did not assist in determining Petitioner's competency at the time she entered her guilty plea.

Finally, Petitioner asserts that the post-conviction court erred in finding trial counsel credible because the record in this case "showed that [trial counsel] set up a mental evaluation that did not need an order for an evaluation, thus bolstering the credibility of [Petitioner]'s family and family friend." She further asserts that trial counsel's and Dr. Raphaeli's testimonies conflict regarding the purpose of Dr. Raphaeli's evaluation.

The post-conviction court credited trial counsel's testimony that she sought an order for evaluation in order to get Petitioner transported to the evaluation. And our review of the record shows that both trial counsel and Dr. Raphaeli testified that the evaluation was

not to determine whether Petitioner was competent but rather to assess Petitioner's mental health. Trial counsel elaborated that she planned to use the results of the evaluation to negotiate a favorable plea agreement. Nothing in the record preponderates against the post-conviction court's findings.

Because the record does not preponderate against the post-conviction court's credibility findings, we are bound by such findings when considering Petitioner's other claims of error.

Regarding Petitioner's claim that trial counsel was ineffective for failing to seek a competency evaluation of Petitioner prior to her entry of the plea agreement, as discussed above, trial counsel testified that during her representation, Petitioner understood what was explained to her, could communicate with trial counsel, and had a good memory. Mr. Pinkston's opinion that trial counsel should have had Petitioner's competency evaluated came only after his review of Dr. Opesso's forensic evaluations, all of which were rendered after Petitioner's guilty plea. *See Kendrick*, 454 S.W.3d at 458 (stating that appellate courts should review counsel's performance from counsel's perspective at the time without using "20-20 hindsight"). When viewing the circumstances from trial counsel's perspective at the time of Petitioner's plea, the record does not preponderate against the post-conviction court's finding that trial counsel was not deficient.

Petitioner has also failed to show that she was prejudiced. The proof at the post-conviction hearing established that Petitioner was found incompetent between 2019 and 2021 but did not establish that Petitioner was incompetent at the time of her guilty plea in 2017. *Wilcoxson v. State*, 22 S.W.3d 289, 313 (Tenn. Crim. App. 1999) (Concluding that "the burden must remain upon the petitioner to establish a reasonable probability that he was, in fact, incompetent at the time of his trial.")

Petitioner is not entitled to relief because she has failed to establish that trial counsel's performance was deficient or that she was prejudiced by the alleged deficiency.

## II. Guilty Plea

Petitioner asserts that the post-conviction court erred in finding her plea to aggravated robbery was entered into knowingly, voluntarily, and intelligently.

To be constitutionally valid, a plea must be knowingly, voluntarily, and intelligently entered by a defendant who is mentally competent. *Collier v. State*, No. M2010-00433-CCA-R3-PC, 2011 WL 4907800, at *8 (Tenn. Crim. App. Oct. 17, 2011). A guilty plea is knowingly, voluntarily, and intelligently entered if it represents "a voluntary and intelligent

choice among the alternative courses of action open to the defendant." *Jaco v. State*, 120 S.W.3d 828, 831 (Tenn. 2003). In determining whether this standard is met, a trial court must look at the totality of the circumstances. *Hunter v. State*, No. M2020-00283-CCA-R3-PC, 2020 WL 7395102, at *4 (Tenn. Crim. App. Dec. 17, 2020) (citing *Blankenship v. State*, 858 S.W.2d 897, 905 (Tenn. 1993)). A defendant's solemn declaration in open court that her plea is knowing and voluntary creates "a formidable barrier in any subsequent collateral proceedings" because such declarations "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

A person "whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope*, 420 U.S. at 171. "[N]ot all people who have a mental problem are rendered by it mentally incompetent." *Wilcoxson*, 22 S.W.3d at 305 (citations omitted). The standard under which a trial court determines whether a defendant is competent is "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him." *State v. Black*, 815 S.W.2d 166, 173-74 (Tenn. 1991) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)). "[I]n the context of post-conviction claims that trial counsel rendered ineffective assistance by failing to raise the issue of competency, the burden must remain upon the petitioner to establish a reasonable probability that he was, in fact, incompetent at the time of his trial." *Wilcoxson*, 22 S.W.3d at 313.

Petitioner notes that she equivocated at the plea hearing and Dr. Raphaeli's report stated that Petitioner did not appear to remember the event. As an initial matter, it appears that the statement in Dr. Raphaeli's report referenced by Petitioner appears to refer to Petitioner's not remembering the circumstances of the Coffee County case and the August 15 arrest, not the facts underlying the Grundy County plea. And as noted by the post-conviction court, "a portion of the plea transcript . . . taken alone and out of context could lead one to conclude that [Petitioner] did not understand the fact to which she agreed. However, a review of the entire plea – coupled with [trial counsel's] PCR hearing testimony – addresses any such concerns." At the plea hearing, despite Petitioner's equivocation regarding the facts, Petitioner then confirmed that she understood the plea agreement, that she understood the rights that she would be waiving by pleading guilty, and that she agreed entering the guilty plea was in her best interest. Petitioner denied that anyone forced, pressured, intimidated, or coerced her into entering her plea. The trial court found that Petitioner was competent to enter a plea of guilt and that she understood the consequences. Further, trial counsel testified at the post-conviction hearing that she and Petitioner had discussed the facts of the case prior to the hearing and Petitioner understood the factual allegations. Trial counsel explained that Petitioner was emotional on the day of the plea hearing and equivocated about the facts because she was "highly embarrassed and

ashamed" to admit to the facts in front of her family. The record does not preponderate against the post-conviction court's finding that Petitioner's plea was knowingly and voluntarily entered.

Petitioner also asserts that the record established that her "competence was nearly the same at the time of [Dr.] Raphaeli's evaluation and [Dr.] Opesso's numerous evaluations" which found her incompetent. The record does not support this assertion. Although Dr. Raphaeli testified that Dr. Opesso's findings were consistent with her observations, Dr. Raphaeli stated that she had not been engaged by Petitioner to conduct a competency evaluation. And as noted by the post-conviction court, Dr. Opesso testified in the federal competency hearing that he could not give an opinion regarding Petitioner's competency in 2017 because he did not evaluate her until 2019. Petitioner is not entitled to relief on this issue.

## CONCLUSION

We conclude that the record supports the post-conviction court's finding that Petitioner was not denied the effective assistance of counsel and that her plea was knowingly and voluntarily entered. For the foregoing reasons, the judgment of the post-conviction court is affirmed.

s/ *Jill Bartee Ayers*

JILL BARTEE AYERS, JUDGE

- 18 -